UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AMERICAN EMPIRE SURPLUS LINES INSURANCE COMPANY, | § § § § § | |
| Plaintiff, | | |
| v. | § § | CIVIL ACTION NO. H-12-2313 |
| NATIONAL FIRE INSURANCE COMPANY OF HARTFORD, et al., | § § § § § | |
| Defendants. | | |

## MEMORANDUM AND ORDER

This case consists of an argument between two insurers over commercial construction coverage. The coverage issue, in turn, rests on the interpretation of a poorly drafted exclusion in a policy from Defendant First Specialty Insurance Corporation ("First Specialty").

**I.    BACKGROUND**

Plaintiff American Empire Surplus Lines Insurance Corporation ("American Empire") and First Specialty both issued insurance policies to ARCI, Ltd. ("ARCI") for different policy periods. American Empire and two other insurers are currently defending ARCI in a construction defect lawsuit styled *Central Park LV Condominium Association, Inc. v. Summit Contractors, Inc., et al. /Summit Contractors, Inc. v. ARCI, Ltd. et al.* pending in Florida state court (the "Association Lawsuit"). In the case before this court, American Empire, pursuant to its rights of subrogation, seeks a declaration that First Specialty is also obligated to defend ARCI in the Association Lawsuit.

First Specialty issued a General Liability Policy to ARCI, as named insured, with a policy period of January 17, 2003 to January 17, 2004. ARCI performed roofing, sheet metal, and

1

chimney flashing work in 2002 and 2003 in the construction of the Vista Lakes Apartments in Florida. In 2006, the Vista Lakes Apartments were converted to condominiums. ARCI was later sued in the Association Lawsuit for its work in the apartment construction. First Specialty argues that its obligation to defend ARCI in the Association Lawsuit was precluded by the part of the relevant policy entitled "Construction of Residential Property Exclusion with Exception for Apartments."

The language appeared in an endorsement (the "Endorsement") to the Policy. One of the headings reads "This Endorsement Changes the Policy – Please Read it Carefully." The Endporsement must be quoted at length so that the pertinent language can be considered in context:

> The following exclusion is hereby added to Section I, Coverage A, Bodily Injury and Property Damage Liability under Paragraph 2., Exclusions and to Section I, Coverage B., Personal and Advertising Injury Liability under Paragraph 2., Exclusions:
>
> In consideration of the premium charged, it is understood and agreed that no coverage exists and no duty to defend is provided for:
>
> Any and all claims, including but not limited to, claims for "bodily injury", "property damage", "personal and advertising injury", arising out of, related to, caused by, or associated with, in whole or part, the construction of residential properties, except apartments, but including and not limited to, single family dwellings, duplexes, three and four family dwellings, or complexes, townhomes, or condominiums. In the event any apartment to which coverage under this policy applies is converted to a condominium, duplex or multi-family dwelling, then coverage under this policy is excluded for any claims for "bodily injury", "property damage", "personal and advertising injury", arising out of, related to, caused by, or associated with, in whole or in part, the construction of said apartments which occur after the conversion of the apartment into a condominium, townhome or multi-family dwelling.

The parties disagree, in particular, as to the last portion of this section, "which occur after the conversion of the apartment into a condominium, town home or multi-family dwelling." American Empire asserts that the phrase "which occur" refers to "bodily injury," "property

2

damage," and "personal and advertising injury."  On this reading, First Specialty has excluded only injuries and damages that occurred after the conversion of the apartments into condominiums.  Therefore, because the alleged construction defects ("property damage") occurred before conversion, First Specialty would not have excluded coverage for the defects alleged in the Association Lawsuit.

First Specialty, on the other hand, contends that "which occur" refers to "claims."  Since the claims for construction defects were made after the conversion to condominiums, those claims are outside First Specialty's coverage.

Both parties agree that the court does not need to receive any testimony or exhibits other than those already submitted.  The court can, according to both parties, now decide the cross motions for summary judgment.

The parties also seem to agree that this particular language has never before been construed by a court in Texas or any other jurisdiction.

## II.    LEGAL STANDARD

A motion for summary judgment requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. Fed. R. Civ. P. 56(a). "Under Texas law '[i]f the written instrument is so worded that it can be given a certain or definite meaning or interpretation, then it is not ambiguous . . . ." *Square D Co. v. House of Power Elec., L.C.*, No. H–09–3917, 2011 WL 6091805, at *3 (S.D. Tex. Dec. 7, 2011) (quoting *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983)); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995) (citation omitted). Interpretation of an unambiguous contract is a legal issue that is properly decided on summary

judgment.  *Boudreaux v. Unionmutual Stock Life Ins. Co. of Am.*, 835 F.2d 121, 123 (5th Cir. 1988).

In interpreting a contract, a court's primary concern is to give effect to the true intent of the contracting parties.  *Sw. Bell Tel. Co. v. Fitch*, 801 F. Supp. 2d 555, 566 (S.D. Tex. 2011) (citing *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005)); *Burns v. Exxon Corp.*, 158 F.3d 336, 340 (5th Cir. 1998) (citation omitted).  To achieve this objective, courts "must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless."  *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003) (citations omitted).

"[A]lthough the duty to indemnify is generally not ascertainable until after the insured has been held liable, it is justiciable prior to a finding of liability when the same reasons negating the duty to defend also negate any duty to indemnify."  *Lincoln Gen. Ins. Co. v. Aisha's Learning Ctr.*, 468 F.3d 857, 858–59 (5th Cir. 2006) (citing *Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997)).

### III.   ANALYSIS

The sentence that contains the disputed language must be read in light of the policy and, in particular, the Endorsement.  The Endorsement is a modification of the provision headed "Exclusions."  The Endorsement bears a heading including the word "Exclusion."  The sentence preceding the sentence with the disputed language excludes coverage for "any and all claims . . . ."  Specifically, it goes on to make clear that no coverage exists for "claims for 'bodily injury', 'property damage', 'personal and advertising injury'."  In understanding the sentence, the operative words are variations of "excludes" and the word "claims."  There is no reason to think that the very next sentence would be constructed differently.  There is every reason to conclude

that the next sentence follows the same structure, using *exclude* and *claims* as the operative words. When the first sentence so clearly states that it is "claims" that are excluded from coverage, it would be strange if the next sentence focused on excluding "bodily injury," "property damage," and "personal and advertising injury." In short, the first sentence excludes broad categories of claims. The second sentence adds another specific category of claims – those arising after the conversion of the apartments to condominiums.

There is a second reason that First Specialty's is the more logical reading, and that relates to the time line. The disputed language was drafted at a time when First Specialty was entering into an agreement with ARCI for coverage on a construction project. ARCI's part of the project was underway and, as already noted, was to provide roofing, sheet metal, and chimney flashing in the construction of apartments. First Specialty sought to exclude coverage as to the period after conversion of the apartments into a different kind of living unit.

It would make little sense that First Specialty would be worried about "bodily injury," "property damage" and "personal and advertising injury" caused by ARCI's roofing, sheet metal, and chimney flashing work that might occur after conversion – which would almost certainly be well after ARCI had completed what it was hired to do. What "property damage" that might occur after conversion could ARCI be responsible for? Its work was long over.

However, it is easily conceivable that *claims* for such occurrences could be made post-conversion. For example, claims could be made that, in connection with the conversion to condominiums, buyers had been the victims of misleading advertising, and that ARCI's original work in 2002 – 2003 had resulted in the property being in some respect deficient. Such potential claims represented a future contingency for which First Specialty would not wish to be liable. Although the draftsmanship was less than perfect, the logic of what First Specialty was doing is

clear enough. It is impossible to believe that ARCI, at the time the Endorsement was issued, had a different understanding.

## IV. CONCLUSION

First Specialty's Motion for Summary Judgment (Doc. No. 18) is **GRANTED**. **AMERICAN EMPIRE'S** Motion for Partial Summary Judgment (Doc. No. 16) is **DENIED**. This case is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**.

**SIGNED** in Houston, Texas, on this the 21st day of March, 2013.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE